Good morning, ladies and gentlemen. Our first case for argument this morning is Reporters Committee v. Rokita. Ms. Lawrence. May it please the Court. Every day, law enforcement officers use their discretion to decide what and when to enforce certain laws. As this Court recognized in Bell, laws are not vague simply because they require an officer to exercise some degree of judgment. While Indiana's buffer law, like most laws, does not require an officer to enforce it every time she could do so, it is not the type of impermissible law which allows officers to draft its terms each time they enforce it. Ms. Lawrence, suppose an officer is walking down the sidewalk on his or her beat. Can that officer ask anyone walking towards him to move back 25 feet? No, Your Honor, and I want to clarify why, because it's important that we look at the actual text of Indiana's buffer law. The buffer law does not allow an officer to tell anyone to move back or to disperse. The buffer law only allows an officer to tell someone to stop approaching. So if someone begins approaching an officer, an officer may tell someone to stop approaching her, and then she may remove herself further. Let's say someone has come within 10 feet, she may step 5 feet further and say, you may not approach any closer to me. She may not tell anyone to move back. And that's the justiciability problem here in this case, is that throughout their complaint, in their declarations, and in their briefing before this Court, the Reporters Committee has consistently said that they have concerns with officers telling them to move back, to back away, to remove themselves to a media staging area. None of that was the reason the District Court held this law invalid, though. That's correct, Your Honor. The District Court held it invalid for a reason that's implied by my colleague's question, which is, what are the reasons an officer may tell somebody to stop approaching? Well, Your Honor, the District Court made two errors. I didn't ask whether the District Court made errors. Yes. I asked you, for what reasons, under this statute, may an officer tell someone to stop approaching? If an officer is conducting their official duties, an officer may tell someone to stop approaching. In other words, for any reason. A good reason, a bad reason, an indifferent reason, a reason the officer makes up, the officer has just had a quarrel with a child, and he doesn't feel like having anybody near him. Are all of those reasons admissible under this statute? Yes, an officer may tell someone to stop approaching within 25 feet of him or her under this statute. Why wouldn't that? For any reason. Don't you have a trouble with that under Colander against Lawson? No, Your Honor, we don't, because if we look at the skilling test, the skilling test sets out two... I didn't ask about skilling. I asked about Colander against Lawson, and I wish you would address my question. Yes, Your Honor. So the reason why we don't have a problem with that is that these types of laws are very different than the types of laws that the court addressed in cases like Colander, Morales, Papachristou, this court address cited in Johnson, like the Ninth Circuit case of Desert Train, where they were allowing officers to stop someone for any reason and to arrest them for things like standing or for sitting in a car for otherwise or any reason. Aren't there still fair notice and arbitrariness issues, though, based upon your answer that any of those could be reasons? No, Your Honor, there aren't, and there's two separate reasons for that. So the first reason for that is under skilling, you have to look at whether someone has fair notice that they might be subject to an order. So if you're within 25 feet of a police officer, you may be subject to an order to stop approaching. That's different than the statute in Bell, because in Bell, the law said... You know, everything you're saying was true in Colander. The dispersal statute in Colander said if the police order you to move along, you must move along. It was perfectly clear what the populace had to do if the police issued the order. The problem, as the Supreme Court saw it, was that there were no standards under which the police could issue these orders. We have a parallel here. It's perfectly clear what the populace has to do if a police officer issues the order, but there doesn't appear to be any standard for the police officer to issue the order. That's why I was asking about Colander rather than some other case. Your Honor, the key difference there is that in Colander, there is no triggering action. A person could just be standing there and an officer could tell them to disperse. That's not the case here, because an officer must be conducting their official duties, and then the officer may only tell someone to stop approaching within 25 feet. I guess what we're trying to push is on the second prong that we need to get to of arbitrariness. If the officer is patrolling, simply walking down the street, the officer is at that point engaged in her official duties. So it would this law restrict a citizen approaching the officer who is patrolling the streets? The law may restrict a citizen from approaching an officer within 25 feet if an officer issues that order. The big issue that the Supreme Court and this court looked at in Bell was whether someone could- Go back to Colander. What triggers the officer being able to enforce the buffer law? If an officer is conducting their official duties, they are allowed to issue an order telling someone that they may not approach within 25 feet. Are you asking us to reach that interpretation, that narrowing based upon the title of the statute? And secondarily, are we the court to do that or should the Indiana court do it? I want to clarify, this is not a narrowing of the statute. This is what the text of the statute says. The text of the statute says that if someone violates a do not approach order issued by an officer engaged in their official duties. So that is the text of the statute. But the other issue that has arisen here is that because the Indiana legislature has adopted HB 1122, House Bill 1122, which the plaintiffs have not challenged, is that there now is yet another law in officer's toolkits which allows them to tell people to stop approaching within 25 feet. So Indiana has created these different laws that allow officers both to tell someone to leave an emergency scene. Those laws haven't been challenged. And then they also have engaged, they have passed a law that allows officers, when they believe someone might interfere with them conducting their duties, to stand back 25 feet. So is it the representation of the state that Dash 14, which is the older version of the Dash 15, the one that was passed, House Bill 1122, are they, is House Bill 1122 repealing the old law? No, Your Honor. House Bill 1122 did not repeal the old law. Both laws are still in effect. And the Indiana General Assembly's decision to belt and suspenders the protections that they offer to law enforcement does not make the old buffer law, doesn't change the analysis there. The only thing that it changes are the potential redressability and ripeness problems for the claims that plaintiffs have brought, when it's unable for us to determine whether the buffer law would actually apply to any of the issues that they are trying to raise here. And furthermore, it would be, it is not, it would not... How does that theory, though, align with the implied repeal doctrine that Indiana recognizes? While Indiana does recognize the implied repeal doctrine, that is not an issue here because both laws can be in place simultaneously. Adding a narrower construction of a law does not constrain the broader interpretation of that law. And if that were an issue that has not yet been addressed by Indiana courts regarding these specific laws and hasn't been addressed. So there's no inconsistency? No, there's not an inconsistency. Just because an officer might say, for example, an officer might be in an emergency situation and say, hey, I need you to back away 25 feet from this car accident. And then someone starts coming up to the officer and the officer says, please stop approaching me. The officer might invoke both the emergency law and the buffer law at the same time, but that doesn't mean that the buffer law or the emergency law somehow repealed each other. They might work in tandem. So similarly, there might be an instance where an officer says, I'm trying to focus on this situation in front of me. I don't know what's going on. I need everyone to stop approaching me. There also might be an instance where an officer says, I don't have time to evaluate that right now in this situation. I just need everyone to stop until we can evaluate what's going on. And in that place, House Bill 1122 and the original buffer law would both be appropriate. Now if this court decided to agree, it also should not affirm the district court's injunction on First Amendment grounds, as the plaintiffs have argued. And there are a couple reasons for that. The first is whether this is a facial or an as-applied challenge to the law. The plaintiffs haven't made the appropriate- Before we move away, though, to the First Amendment, the underlying First Amendment claims, I want to go back to the, in the brief, I noticed that the state represented that the buffer law overlaps the emergency incident statute. Yes, Your Honor. And then in the reply, it comes back and kind of walks that back. So I wanted to make sure I appreciated the state's position. Yes. So the statutes, I would say they're interlocking. So there might be a situation where they both apply. There might be a situation where only one applies. For example, you can imagine a situation in which someone has set up crime tape and an officer is standing within five feet of that crime tape. There, the emergency law would say, I can tell you to move 25 feet away, but also the officer five feet in can say, stop approaching. You don't, don't get any closer than 25 feet to me. Or there might be other situations where crime tape is set up and the officer is 100 yards away, and then the buffer law wouldn't apply because no one is, could enter within 100 yards of the officer without the buffer law. The reason why a First Amendment challenge would also not be appropriate here is that plaintiffs have not shown that a substantial number of the law's applications would outweigh its plainly legitimate sweep. And the main reason for that is that the plaintiffs talk about this law as though it only applies in public places, but the buffer law applies wherever officers are. So that may be in private residences, in non-public forums, in areas where the First Amendment protections are not implicated or are so low that it would be a very different analysis. They haven't done that analysis here. And further, it would be improper to affirm it on the as-applied challenge that they claim to have raised of non-obstructive news gathering because no district court has made any findings or weighed the equities on what the range of that injunction, of, of what that would look like. And then the injunction itself bars the state and the city from enforcing the buffer law against anyone anywhere, not only against people engaged in non-obstructive news gathering activities. And then finally, there's, of course, there's a separate problem. You haven't challenged the universal injunction nature of this order, have you? No, Your Honor, but we're, Supreme Court's going to hear oral argument on Thursday about injunctions that reach non-parties. Yes, Your Honor. But I don't understand you to have made that argument here. Well, Your Honor, to be clear, we are still a party to this case, but if the challenge is only an as-applied challenge, it would be improper to uphold a facial invalidity of the statute only if the only way that plaintiffs can succeed is on this narrow as-applied area. And if the court would, I would like to reserve the rest of my time for a moment. Well, the district court entered a preliminary injunction. Yes, Your Honor. Is there anything that the state wants to show at a hearing on a permanent injunction? Yes, Your Honor, especially if we were discussing the First Amendment issue. So that discussion would be, plaintiffs have said that they wish to be within a few feet of police officers. So that would require evidence of the technology that's available. Other district courts, as this court is currently deciding the Nicodemus case, found that that wasn't. I'm not sure you heard my question. Is there anything the state wants to show? You may think the plaintiffs haven't shown what they need to show. I am asking you whether there is anything the state wants to show. Yes, Your Honor, that would include testimony from officers and showing what these type of circumstances actually are like and the necessity for this law in certain circumstances and why it may be required. Thank you. Mr. Cleary. Thank you, Your Honor, and may it please the court. Under the statute that the district court found unconstitutionally vague here, any law enforcement officer in Indiana can bar any member of the public from getting within 25 feet. Can the statute be interpreted in a way so an officer may only give an order to move back when that officer is engaged in official duties? Well, I think engaged in official duties, I agree with the state, that's what the statute says. The problem is engaged in official duties swipes in everything law enforcement officers do on the job. What it doesn't require and what the state agrees it doesn't require is any showing that the individual's presence in fact interferes with law enforcement officers' ability to perform their duties. And I think the contrast with Indiana's new 25-foot law makes that clear since the new law requires reasonable grounds to believe an individual's presence will interfere with law enforcement duties. And I think the contrast highlights the statute the district court was addressing here. It has no nexus to interference. It has no nexus to safety. It has no set nexus to any of the interests that Indiana suggests would justify it. And I heard my colleague on the other side agree in response to Judge Easterbrook's question. An officer can issue an order to stop approaching for any reason or for no reason under the law as written. That's the same constitutional flaw the Supreme Court condemned in Shovelsworth in Morales that this court likewise condemned in Bell v. Keating. So I don't think there's any way to read the statute that avoids that difficulty as the state appears to agree with us. If there's going to be a narrowing that's going to go on, where should that happen? This court, Indiana courts? So I don't think the statute is susceptible to a narrowing construction, but if this court disagreed on that front, I think this court and the Supreme Court have often emphasized that waiting for a state court to supply a narrowing construction when you have a standardless statute that threatens to chill speech in the meantime would be inappropriate. You need a prompt adjudication in federal court because otherwise individuals are waiting and guessing what their rights are and engaging in self-censorship while that clarity is lacking. That was the case in the city of Houston v. Hill dealing with heckling police officers where the state could likewise urge an opportunity to interpret the statute and the Supreme Court said no, that will chill too much speech. I think it's true here as well. There's no obvious place in the text to fit a narrowing construction. As Indiana said repeatedly before you just now, if the officer is engaged in their duties and if an individual is within 25 feet, they can be ordered to stop approaching on pain of arrest and criminal prosecution. I just don't see where a state court would be in a position to supply a meaning other than the one that we all appear to agree on here. Given those defects on the merits, I'd like to spend a little bit of time addressing the standing issues to which my colleague addressed most of her argument. If I could, I'd sort of emphasize one point on the law, one point on the record in this case, and then one point on the practicalities of Indiana's position. On the law, I think for all that Indiana speculates that maybe the constructions are reporters received were not under this statute or were voluntary requests rather than orders. This court's case law is clear. We wouldn't have needed to demonstrate evidence that we in fact received in order to stop approaching if we credibly alleged that we want to do conduct that triggers the statute. And there's a credible threat of enforcement if we do. So no individualized threat of enforcement would have been necessary to satisfy Article 3 because as this court put it in Majors v. Able, the threat is latent in the existence of the statute. But we did go further, and I want to emphasize that as I think Judge Easterbrook was mentioning earlier, the district court made a factual finding that our reporters in fact received instructions to back up that would have triggered the application of this act after it passed. That's page 11 of the supplemental appendix. And if you look at the declarations in the record on which the district court based that conclusion, one from Ryan Fedwal, who's a photographer for WTHR, one from his newsroom director for WTHR, they both described not just that they were in scenarios where they were in public, they approached within 25 feet of officers, and told that they ought to back up, but that those encounters unfolded in circumstances where members of the public were being allowed to approach closer, in other words, where there was no fixed perimeter in effect. And as the state itself has argued to this court in the Nicodemus proceeding, the emergency incident law only applies when law enforcement is enforcing a fixed perimeter. So those incidents that are described in the record could not have been examples of the emergency incident law being enforced. The only law that would have empowered officers to order our reporters back under those circumstances would be the buffer zone law. So I think we went well beyond what Article III would have required on that front by presenting evidence that, in fact, the statute has already, on a number of occasions, been enforced against our reporters under circumstances that required them to forfeit their opportunity to exercise First Amendment rights. If we move away from the injury in fact, say if accepting you satisfy both credible threat as well as self-censorship, my focus on the redressability position that the state has made is that now that this new statute is in place. And so if you could just address that in the minutes that you have, I'd appreciate it on redressability. I think the problem for that argument is that as the state agreed, the two laws have different scopes. And so the existing 25-foot law continues to injure our clients if the preliminary injunction weren't in effect in circumstances where the new law won't apply. And those are the circumstances where their First Amendment rights are most at stake because the new law only applies if an officer has reasonable grounds to believe an individual's presence will interfere with law enforcement. So we would still be injured by enforcement of the old law in all of the circumstances in which our reporters approach within 25 feet of law enforcement. And there is no reasonable basis to believe that they would interfere with the officer's performance of our duties. What I'm calling the older Buffalo or Dash 14 is still applicable, then that would be possible. That's right. Okay. Yes. Officers would still have the authority under those circumstances to order them to stop approaching for any reason or no reason. They still face the risk of jail time, arrest, prosecution if they approach in those circumstances. That injury flows from the old law, not the new one. And redressability does not require complete relief. It's enough that there are circumstances in which we've presented evidence, we face a credible threat that the old Buffalo rather than a different Indiana statute will be enforced against us. And in those circumstances, the preliminary injunction relieves the law's chilling effect. Shifting to the committee, is there a standing problem for the committee under the Alliance for Hippocratic Medicine case? I take a look at the complaint, specifically paragraphs 46 through 50. Are they doing much more than publishing new materials on the website? I agree with you. It's a much closer question after Alliance for Hippocratic Medicine. And I think you would need to toss out of the analysis some of the allegations we made under previously existing law that deal with issue advocacy rather than the direct provision of services. I think the Reporters Committee is probably still on the right side of the issue between organizations that are really just saying, I advocate on this issue and advocating has gotten harder, and organizations like the one at issue in Havens Realty itself that provided direct services. And the Reporters Committee's mission primarily involves providing direct legal services to journalists. But here there's not an actual expenditure of funds, at least yet. It indicates in paragraph 48, intend to host additional trainings. Observed an increase in arrests, but at this juncture is there enough for the committee to be on that right side of Havens Realty? Well, the standing would be assessed at the time the complaint was filed, and subsequent developments would go, if anything, to mootness rather than to standing in the first instance. If the court was interested in more information about what's happened in the interim, I'm happy to ask my colleagues who deal with our training practice and our new local legal initiative attorney in Indiana. But I think the main point I'd emphasize in connection with Alliance for Hippocratic Medicine is standing is a much more straightforward question for all of the news organization plaintiffs, who are engaging in news gathering within 25 feet of law enforcement officers every day of the week. They're getting told to back up several times a week, as the declaration from Scott Humms shows, and the act attaches new criminal penalties to that conduct. And as the court knows, as long as one plaintiff has standing, the district court had the power to adjudicate the case. The other point I do want to emphasize on standing is the brass tacks practical consequences of what I take to be Indiana's view. Because imagine the paradigmatic interaction that unfolds between a member of the public or a journalist who encounter each other on the street. You're minding your own business. Maybe you're going to a political rally or something like that, where law enforcement are present. Law enforcement officer says to you, hey, I'm going to need you to stand over there. Now, have you just received an order that's going to send you to jail and get you criminally prosecuted if you defy it? Well, the act at issue here doesn't require officers to use any magic words, certainly doesn't require them to reference this statute in particular, and it doesn't require them to warn you twice. So the only way you're going to learn to scientific certainty which law they thought they were enforcing in the privacy of their hearts is if you defy that instruction, get arrested, get charged, and learn from the charging document which statute the officer says was at issue. But risking arrest and prosecution is exactly what this court and the Supreme Court have repeatedly said a plaintiff does not need to do before bringing a challenge to a statute that on its face regulates First Amendment conduct in which they want to engage. That's exactly the situation we have here. There's no dispute that when our reporters approach within 25 feet of law enforcement officers, that triggers the authority to order them to stop approaching. That order threatens to send them to jail, and like other objectively reasonable people, the record shows that what our reporters have done in response is err on the side of caution, forfeit opportunities to exercise their First Amendment rights because they would rather not spend the night in jail to test the question. That's a classic chilling effect injury for purposes of Article III. I'm happy to field other questions the court might have on the merits. The last point I would throw into the mix is on this interpretive question about whether the statute says you can be ordered just to stop approaching or also to move back. Because I do think the state's position on appeal here is new. If you look at their briefing in the district court, their motion to dismiss, for instance, when they offer examples of the statute being enforced, I believe all but certainly most examples of officers telling people to move back. And I think the... Does anything in the statute say the police can order people to move back? I think in context, in an ordinary language sense, to approach just means to draw closer. To draw closer. Doesn't necessarily prejudge who is moving. You say nothing in the statute would allow a saving construction. Nothing in the statute allows anybody to order somebody to move back. It is what it is. Well, the next point I wanted to take that, which maybe responds to your observation here, is with those caveats, I'm not sure the distinction has any stakes. I don't think it has stakes for standing. Because if you've been told you have to move back, you've necessarily also been told you can't get any closer. And so that's enough to trigger liability under the statute if you go on and you decide to approach regardless. And I'm not sure it matters on the merits. Because you would still need a standard to decide who gets ordered to stop approaching, even if you can't order them to move back. And for First Amendment purposes, you'd still be prohibiting substantially protected speech rather than harmful conduct. Suppose the statute were amended tomorrow to say that the police may order somebody to stop approaching when necessary in the course of their official duties. Would that make you happy? I think you might still have vagueness problems at the margins about what the duties are. In your view, what would you not have vagueness problems with? If you put in a necessity requirement, you would think that's pretty strict. But it's not self-defining. There are, it turns out, there are very few things in language that are self-defining. Do you have language that you think should be in this statute? So I want to be clear. I think the new Indiana 25-foot law is not vague. And my only reason for hesitating on your question about necessary was not to do with how much we get out of necessary, but how much clarity we get out of necessary to their official duties, right? What's the sense in which the order is necessary to their official duties? I think the new law, and I'm conscious I'm running on time, but I want to answer any questions the court might have, we would happily agree the new law is not vague because that reasonable grounds to believe a person's presence will, in fact, interfere with an officer's duties tells both officers and the members of the public what kind of conduct you're looking out for. You're concerned about interference. You're concerned about some actual practical obstacle.  Thank you, counsel. We'd ask the court to affirm. Anything further, Ms. Lawrence? If I may, Your Honor, I'd like to specifically discuss the Colander point and whether there are standards in the law here that are different than the standards that existed in Colander. The problem there was that the law allowed officers to ask for credible and reliable forms of identification. So an officer one could see a form of identification and say, this is credible and reliable. You are free to go. Officer two could look at the same ID card and say, oh, this is not credible and reliable. You are arrested. In this situation, if someone has received an order for- That wasn't the problem the Supreme Court had in Colander. The problem was there were no standards for the officer's commands. There were no standards because the officer could use any standard in determining- The officer could do it because he had a bad breakfast. Yes. And you've already answered my question that the officer can order somebody to stop approaching because he had a bad breakfast. That would be permissible. The other- that would be something that the law allows if an officer is conducting his duties. The other issue that I would like to raise is that if there are as-applied concerns with a specific issue of arbitrary enforcement in a specific instance or discriminatory enforcement, those can be brought as as-applied challenges. We would ask this court to vacate the injunction. Thank you. Thank you, counsel. The case is taken under advisement.